## CHARLES BUTCHER, Respondent, v. EMANUEL HOFFMAN, Appellant.

### St. Louis Court of Appeals, March 3, 1903.

1. **Malicious Prosecution: ADVICE OF COUNSEL: GOOD FAITH.** For a defendant in an action of malicious prosecution to exonerate himself by showing he took counsel, he must show that he disclosed to the counsel all the facts in regard to the alleged crime which he knew or by the exercise of reasonable diligence could learn, and took advice thereon in good faith.

2. ———: **PROBABLE CAUSE.** Probable cause, which will relieve a prosecutor from liability, is a belief by him of the guilt of the accused based on circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious man.

3. ———: ———: **EVIDENCE.** In the case at bar, the evidence is examined and it is held to be for the jury whether the defendant knew that the party against whom he made the affidavit charging him with larceny, was not guilty.

4. ———: ———: **FACTS: BURDEN OF PROOF: PRACTICE, TRIAL.** If in a case of malicious prosecution, want of probable cause is shown, the jury may infer malice from the facts which show the want of probable cause, and the burden then falls on the defendant to show he acted without malice.

5. ———: ———: **QUESTION OF JURY.** In a case of malicious prosecution the question of absence of probable cause and of the existence of malice on the part of defendant, were for the jury.

Appeal from Jefferson Circuit Court. — *Hon. F. R. Dearing,* Judge.

AFFIRMED.

*Sam Byrns* for appellant.

(1) It is a proposition too well settled to require the citation of authorities in its support, that the existence of malice and the want of probable cause are both necessary to the maintenance of an action for malicious prosecution. They are each distinct and essential ingredients of this private wrong, and both must exist

at the institution of the prosecution complained of. (2) The demurrer to the testimony, asked by the defendant at the close of plaintiff's case, should have been given. A man has probable cause which will relieve him as a prosecutor from liability, if his belief in the guilt of the accused is based upon circumstances sufficiently strong to induce such a belief in the mind of a reasonable person. Vansickle v. Brown, 68 Mo. 627; Sharp v. Johnson, 76 Mo. 660; Christian v. Hanna, 58 Mo. App. 43. (3) Malice is a condition of mind. A prosecution may be said to be malicious when it is commenced and carried on with full knowledge that it is without legal justification or foundation. McGarry v. Railroad, 36 Mo. App. 340. A bad intent is an essential ingredient for "*actus non facet reum nisi mens sit rea.*" Malice being a condition of the mind, may be shown to exist by direct proof, like any other fact, or it may be inferred from other facts proven. Hickman v. Griffin, 6 Mo. 31; Williams v. Vanmeter, 8 Mo. 339; Casperson v. Sproule, 36 Mo. 39; Sappington v. Watson, 50 Mo. 83; Sharp v. Johnson, 59 Mo. 575, and 76 Mo. 660. (4) I want to distinguish this case from one where a party has been discharged by a committing magistrate for want of probable cause. In the language of the Supreme Court of Missouri: "Even in a criminal proceeding, the final acquittal of the accused can have but little weight as evidence of probable cause compared with an acquittal or discharge before a magistrate or grand jury. The magistrate and grand jury have the very question of probable cause to try; the evidence on the side of the prosecution is alone examined, and the proceeding is entirely ex parte. Under such circumstances the refusal of the examining tribunal to hold the accused over to trial must necessarily be very persuasive evidence that the prosecution is groundless, but this would not be the case with a verdict of acquittal and examination of the testimony on both sides. Brant v. Higgins, 10 Mo. 734; Christian v. Hanna, 58 Mo. 43.

*James F. Green* and *J. G. Berkeley* for respondent.

(1) Before defendant can invoke the defense that he acted upon legal advice, he must show that he disclosed to counsel all the facts which could have been ascertained by him by proper diligence. Pipkin v. Hauck, 15 Mo. App. 373; Stubbs v. Mulholland, 168 Mo. 75; Casperson v. Sproule, 39 Mo. 40. (2) Where there is proof of want of probable cause, the jury may infer malice from the proof showing such want of probable cause. Stubbs v. Mulholland, 168 Mo. 74; Sharpe v. Johnston, 59 Mo. 575. (3) When there is any evidence of malice or want of probable cause, those questions are for the jury and it is error to refuse to submit them to the jury. Stubbs v. Mulholland, 168 Mo. 89; Moody v. Deusch, 85 Mo. 237; Casperson v. Sproule, 39 Mo. 39; Hill v. Palm, 38 Mo. 13.

GOODE, J. — This is an action for malicious prosecution, begun in the circuit court of Jefferson county, Missouri, on June 7, 1902, and tried in said court on January 15, 1902, on an amended petition which avers that the plaintiff was a married man on and prior to April 14, 1901, and was living in Jefferson county, Missouri; that he was living as a tenant, with his family, on the farm of the defendant; that on or about said 14th of April, the defendant maliciously contriving and intending to injure him in his good name, fame and reputation, appeared before L. B. True, a justice of the peace, and then and there maliciously and without probable cause, did make an affidavit and lodge a charge before said justice on April 13, 1901, at the said county of Jefferson, State of Missouri, that this plaintiff did unlawfully steal, take and carry away from his premises (E. Hoffman's):

One half barrel of mess pork, of value......$ 5.50
One half bushel of navy beans, of value....   2.35

Vol 99 app—16

One half barrel of sauerkraut, of value.... 2.35
One case of tomatoes, of value............. 1.80
One half bushel peas, of value............. .80
Two pounds of green tea, of value.......... 1.60
Two pounds of Java coffee, of value........ 1.00
Two pounds caraway seed, of value........ .24
One bushel of onions, of value............. 1.80
Two pieces of breakfast bacon, of value.... 1.96
Fifty pounds of granulated sugar, of value...2.75
One large ham, of value.................. 2.64

All being of value of.................$24.79

and being the personal property of said Hoffman. That without probable cause he maliciously signed said affidavit, and that the justice issued a warrant on which he was arrested; was brought before said justice; was poor and could not give bond;'was cast into jail to await trial; that he was in jail from the 15th day of April until the 25th day of April, 1901; that he was tried before said justice; that the defendant was a witness against him and testified, and that he was acquitted by the justice. That while in jail he contracted a disease of the eyes, that his sight was impaired, that he suffered in body and has been humiliated and disgraced, injured in his good name, fame and reputation, and that his actual damage is five thousand dollars and punitive damage five thousand dollars.

The defendant answered by a general denial.

The evidence showed that in the spring of 1901, the plaintiff, Charles Butcher, obtained information that the defendant Hoffman wanted help on his dairy farm in Jefferson county and applied for work. He met Hoffman at an employment office in the city of St. Louis and arranged to work for him for one dollar a day, house rent and fuel, moving to Hoffman's farm the same day. Hoffman boarded him and his family for about a week until their household goods arrived,

and then assigned him quarters in a house some two hundred feet from Hoffman's own home and there he stayed for about three months.

A written contract was made between the parties sometime after Butcher went on the farm, by which it was agreed Butcher should work for Hoffman and should receive as consideration a place in which to live and one dollar for every week day he worked.

Shortly after Butcher's engagement, Hoffman engaged another hand on the place and asked Butcher to board him, which he agreed to do. A dispute arose about the entertainment he furnished the hand, Hoffman contending that Butcher did not provide enough to eat and rather insisting on his getting more. During the conversation, Hoffman said he was going to order some groceries from St. Louis and wanted to order some for Butcher at the same time. Butcher consented and made out a list of articles and they were sent for by Hoffman in the same order with the goods purchased for his own use. The goods got to Vineland, the railway station nearest Hoffman's farm, on a Tuesday early in April, and the evidence tends to prove Butcher was notified of that fact by the station agent and told Hoffman about it the evening of their arrival. Hoffman paid the freight on them the next day at noon and had them set out on the station platform with the intention of having them hauled to his residence, but forgot about it that day. In the course of the afternoon Butcher took a wagon and team, drove to the station, got the goods which had been ordered for him, hauled them to his home and put them in the cellar. It is not altogether clear whether he took any articles which were not included in the list he had furnished Hoffman, but, so far as we can gather, he only took those which had been ordered for him. Hoffman was at Butcher's home the same night and Butcher told him he had the goods. Hoffman asked him how many pieces there were and Butcher said he did not know; whereupon

Hoffman angrily told him he ought to know and was a fool for not knowing, or words to that effect. Hoffman does not deny this conversation or that he was informed by Butcher of the latter having hauled the goods from the station, but declares he understood all the time that Butcher had hauled them to his (Hoffman's) residence and put them in the cellar there; that Butcher had no right to any part of the goods except as they were turned over to him by Hoffman who had bought them and was responsible for them. Butcher had previously bought other provisions from Hoffman and carried a pass book in which were entered all purchases, which he made, such as of butter and lard, to be deducted from his wages at the end of the current month.

On the Saturday before the goods in question arrived, the parties had a settlement and it was found the defendant owed plaintiff thirteen or fourteen dollars, which the latter insisted on having in order that he might pay a man named Simon whom he owed; so defendant paid him his wages to that time. Plaintiff swore that Hoffman agreed to let the debt plaintiff owed him for groceries run over until the next pay day, which would fall on the fourth day of the ensuing month of May.

The real question of fact in dispute between the parties is, whether Butcher got the goods with the full knowledge and authority of Hoffman, to be charged to Butcher and the price worked out by him during the coming month, or whether they were to be stored in Hoffman's cellar and belong to him to be doled out to Butcher as the latter needed them and was entitled to them on his wages, each article being charged on the pass book as it was obtained.

Plaintiff's testimony tends to support the former theory and the defendant's the latter. The plaintiff's testimony further tends to prove that a sharp quarrel or dispute came up between him and the defendant a day or so after the arrival of the goods, which resulted

in plaintiff loading a wagon with his property, including the goods in controversy, hauling them to Vineland station and shipping them to Bismarck the following Saturday, to which point he and his family took the train Saturday evening. Hoffman had gone to St. Louis that morning and was not notified by plaintiff of the latter's intention to leave, nor was any settlement had between the parties. Plaintiff affirms that Hoffman owed him for seven days work at one dollar a day and also owed his wife for some work she had done, while he admits owing Hoffman for the groceries. When Hoffman returned home Saturday evening, he was notified by one of the hands of Butcher's departure and that he had taken the goods with him. The next day he consulted the prosecuting attorney of the county and afterwards swore out a warrant before L. B. True, a justice of the peace of Bismarck, Missouri, charging plaintiff with the larceny of the groceries. Hoffman said he never knew until after Butcher's departure that the goods had been stored in the latter's house, but supposed all the time they were in his (Hoffman's) cellar.

The testimony of the prosecuting attorney, Joseph G. Williams, as to Hoffman's statement of the facts of the occurrence, on which said prosecuting attorney advised the prosecution of the plaintiff, is as follows:

In answer to a question as to what Hoffman said, he replied: "I can't tell you exactly; I don't remember it; I never thought anything about it; didn't know I was going to be called upon as a witness. On this Sunday I was in my office in De Soto and Mr. Byrns came to my office and told me Mr. Hoffman had a man who had stolen a lot of goods from him and Mr. Hoffman wanted to see what could be done and I says well has he got a case? and he says yes, and I says all right you have him come up to see me and I will see what he has to say; if he has got a case we will have him arrested. He went and had Mr. Hoffman

come to see me and I think he stated that he had ordered some groceries from St. Louis; he had gone away and this fellow had taken them while he was away; he enumerated the items and I told him that would make him guilty of petit larceny.

"Q. Where did he tell you he took the groceries from? A. I don't remember.

"Q. Tell you he sent for the groceries to be used by Mr. Butcher? A. He had ordered the goods to be used and that Mr. Butcher should use some of them. He said Mr. Butcher had asked him to order some goods for him and when he was away Mr. Butcher took all the goods and moved away.

"Q. I would like to know just what that statement was? A. I don't know, I can't recollect it.

"Q. You heard the testimony of Mr. Hoffman in the justice court in De Soto? A. Yes, sir.

"Q. That statement made there wasn't sufficient to make a conviction? A. I think so."

The prosecuting attorney filed an information before the justice of the peace based on defendant's affidavit, the latter appearing at the trial and testifying as a witness against the plaintiff.

It should be stated that when the plaintiff was arrested he was unable to give bond and was incarcerated in jail for about five days.

At the hearing of the cause he was discharged by the justice, who thought the evidence was insufficient to warrant a conviction. Thereafter the present action was instituted.

At the close of the testimony herein, the court instructed the jury for the plaintiff substantially as follows; that if they believed the defendant instituted the prosecution before justice True by filing an affidavit charging the plaintiff with larceny of the property mentioned in the affidavit, and caused a warrant to issue against plaintiff, whereby plaintiff was arrested and incarcerated in jail and was thereafter tried and ac-

quitted, and if they further found the prosecution was without probable cause on the part of the defendant and was malicious, they would find the issues for the plaintiff.

Probable cause was defined to mean reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that plaintiff was guilty of the offense with which defendant charged him; a definition very favorable to the defendant.

Malice was defined to mean the doing of a wrongful act intentionally.

The jury were further told that the discharge of the plaintiff by the magistrate was a fact in evidence to be considered in determining whether the prosecution was without probable cause, but was not conclusive proof of it.

Another instruction was of the following tenor: that in order to constitute larceny, there must be a taking and carrying away of property and an intention to fraudulently convert the same against the will of the owner; that if, therefore, the jury found the groceries mentioned in defendant's affidavit were delivered to plaintiff with the full knowledge and consent of the defendant, upon the agreement of plaintiff thereafter to pay defendant for them, they became the property of the plaintiff and his removal of them from the premises of defendant did not constitute larceny.

An instruction given on the measure of damages we will not recite as there was no point made against it.

At the request of defendant, the jury were instructed that if they found from the evidence that Hoffman, before he began the prosecution, consulted an attorney at law in good faith and communicated to such attorney all the facts within his knowledge, or which he might have learned by reasonable diligence, bearing on the guilt or innocence of Butcher, and that said consultation with the attorney was had by Hoffman

with a view to the advice of counsel learned in the law, and that the attorney, on such submission of facts, advised Hoffman that Butcher was liable to a criminal prosecution for petit larceny, and further found that said prosecution was begun and carried on by Hoffman in good faith in consequence of said advice and not pursuant to a previous determination to commence said prosecution, then there was probable cause therefor and the verdict should be for the defendant.

Another instruction told the jury that if they found from the evidence Hoffman, before he began the prosecution, placed the facts as they occurred before the prosecuting attorney of Jefferson county, and said attorney on this statement of facts advised Hoffman to institute a prosecution and aided in procuring the necessary papers, then there was probable cause and the jury should find the issues for the defendant.

There was a judgment in plaintiff's favor for $500, from which defendant appealed.

But one assignment of error is made, which is that the evidence was insufficient to take the case to the jury and that the court erred in refusing an instruction at the close of plaintiff's case and at the close of all the evidence to return a verdict for the defendant.

This contention is based largely on the fact that the defendant consulted an attorney of his own choice, as well as the prosecuting attorney of the county, before he acted; that he laid all the facts before them in good faith and that on the prosecuting attorney's advice he swore out a warrant against the plaintiff.

One difficulty in dealing with this assignment is that it was not clearly shown by the evidence that the defendant placed the actual facts before the prosecuting attorney; nor, indeed, is it clear beyond dispute or doubt what the facts were. As indicated above, one of two theories of the occurrence might have been adopted, and there was ample evidence to support either. The goods in controversy were undoubtedly ordered

to be used by Butcher and they may have been taken
by him from the station, hauled to his own house and
put in his own cellar to be used as he needed them, with
the full knowledge and consent of the defendant, the
latter agreeing to that course and intending to collect
the pay for the goods on the ensuing pay day in May.
On the other hand, it may be true that Hoffman in-
tended to keep the goods stored in his own cellar and
deliver articles to plaintiff as he needed them, charging
them on the pass book.

Now it is obvious that under the first state of facts
Butcher became the owner of the goods when they were
taken by him with Hoffman's knowledge and consent
and was thereafter a debtor to Hoffman for the price
of them. In those circumstances he could not have been
guilty of larceny in storing or shipping them, for they
were his own property. On the contrary, if Butcher
knew and understood that the goods were Hoffman's,
although ordered for him (Butcher) and he took them
from the station and appropriated them to his own
use without any knowledge on the part of Hoffman,
that action constituted larceny—not shipping them to
Bismarck.

The testimony of the prosecuting attorney tends to
show that Hoffman laid the facts before him according
to Hoffman's theory of the case which, of course, would
at once lead the prosecuting attorney to believe a lar-
ceny had been committed; whereas, had the facts been
stated the other way, it would have been apparent none
had been committed.

For a defendant in an action for malicious prosecu-
tion to exonerate himself by showing he took counsel,
he must show that he disclosed to the counsel all the
facts in regard to the alleged crime which he knew or
by the exercise of reasonable diligence could learn,
and took advice thereon in good faith. Stubbs v. Mul-
holland, 168 Mo. 47.

In the present case the plaintiff and defendant

differ utterly as to what the facts were; the former insisting on a state of facts which rendered a larceny by him of the goods impossible; while the latter insists on facts which tend strongly to show Butcher was guilty of larceny. The question is, who was the owner of the goods at the time of the alleged theft? And, as stated, the evidence on that question is contradictory. We do not, therefore, think that defendant must be held to have exonerated himself because he took counsel before he had the plaintiff arrested. That defense was for the jury and was properly submitted by the instructions given for the defendant.

Another proposition urged is that there was no evidence of malice on the part of the defendant or of want of probable cause for the prosecution.

As to the want of probable cause, what we have said above shows there was plenty of evidence going to show no probable cause existed for the plaintiff's arrest. Besides, if his, as well as some other testimony was true, not only was no larceny committed when Butcher took the goods from the station to his own house or shipped them to Bismarck; but, as stated above, no larceny could be committed by him; for the ownership and possession of the goods had been turned over to him by the defendant and he stood simply as the defendant's debtor for their cost.

It has been said that reasonable and probable cause, which will relieve a prosecutor from liability, is a belief by him of the guilt of the accused based on circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious man. Van Sickle v. Brown, 68 Mo. 627; Stubbs v. Mulholland, supra. How could defendant entertain the belief that plaintiff had stolen the goods if, in fact he had agreed the goods should be paid for on the next pay day out of the plaintiff's wages, knew plaintiff had stored them in his cellar and offered no objection to his keeping them? It is apparent that if the prosecution was instituted

under those circumstances, it was wholly groundless, known to be so by Hoffman when he instituted it, and gives color to the plaintiff's theory that the object was to force plaintiff to pay for the groceries; and there was substantial evidence to show the actual facts were that way.

Next, in regard to lack of proof of malice on the part of defendant. That contention falls with the preceding one; for if the defendant acted under the circumstances narrated, he acted without probable cause and with full knowledge of there being no ground for the prosecution, which was sufficient to prove malice. The law is that if want of probable cause is shown, the jury may infer malice from the facts which show the want of probable cause; and the burden then falls on the defendant to show he acted without malice. Stubbs v. Mulholland, supra.

The whole subject of the law of malicious prosecution was so exhaustively treated and settled recently by the Supreme Court in an opinion prepared by Judge SHERWOOD, in the case of Stubbs v. Mulholland, supra, that it would be a waste of time to enter on a discussion of the subject. That, under the evidence in this case, the question of absence of probable cause and of the existence of malice on the part of defendant were for the jury, there can be no doubt in the light of that opinion.

The instructions given by the court were full and fair and must have thoroughly posted the jury as to the law of the case.

Finding no error in the record the judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.